UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| ALEINNA S.,<br><br>　　　　Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of the Social Security Administration,<br><br>　　　　Defendant. | **REPORT AND RECOMMENDATION TO REVERSE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS AND REMAND FOR ADDITIONAL PROCEEDINGS**<br><br>Case No. 1:24-cv-00077<br><br>District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Daphne A. Oberg |

　　　　Aleinna S.[1] brought this action for judicial review of the denial of her application for disability insurance benefits and supplemental security income by the Commissioner of the Social Security Administration.[2] The Administrative Law Judge (ALJ) who addressed Ms. S.'s application determined she did not qualify as disabled.[3] Ms. S. argues the ALJ erred by failing to include a limitation related to ear protection in the residual functional capacity finding.[4] Where the ALJ found an audiologist's medical opinion regarding the need for custom ear protection persuasive, the failure to include

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including social security cases, the plaintiff is referred to by first name and last initial only.

[2] (*See* Compl., Doc. No. 1); *see also* 42 U.S.C. §§ 401–434, 1381–1385.

[3] (Certified Tr. of Admin. R. ("Tr.") 30–51, Doc. No. 9.)

[4] (Opening Br. 7, Doc. No. 10.)

this limitation in the RFC (or to adequately explain why it was not included) requires reversal. Accordingly, the undersigned[5] recommends the district judge reverse the Commissioner's decision and remand for further proceedings.

## STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of the Commissioner's final decision. This court reviews the ALJ's decision to determine whether substantial evidence supports his factual findings and whether he applied the correct legal standards.[6]  "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[7]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[8] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[9]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10]  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an

---

[5] This case is referred to the undersigned magistrate judge under 28 U.S.C. § 636(b)(1)(B). (Doc. No. 5.)

[6] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[7] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

[8] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation modified).

[9] *Id.* at 103 (citation omitted).

[10] *Id.* (citation omitted).

administrative agency's findings from being supported by substantial evidence."[11]  And the court may not reweigh the evidence or substitute its judgment for that of the ALJ.[12]

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" expected to result in death or last for at least twelve consecutive months.[13] An individual is considered disabled only if her impairments are so severe, she cannot perform her past work or "any other kind of substantial gainful work."[14]

In determining whether a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;

2) she has a severe medically determinable physical or mental impairment;

3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);

4) she has the residual functional capacity to perform past relevant work; and

---

[11] *Lax*, 489 F.3d at 1084 (citation omitted).

[12] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[13] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[14] *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

3

    5) she has the residual functional capacity to perform other work, considering her age, education, and work experience.[15]

In the first four steps, the claimant has the burden of establishing disability.[16] And at step five, the Commissioner must show the claimant retains the ability to perform other work in the national economy.[17]

## PROCEDURAL HISTORY

Ms. S. applied for disability insurance benefits and supplemental security income in October 2021.[18] After an administrative hearing, the ALJ issued a decision in August 2023, finding Ms. S. not disabled and denying benefits.[19]

At step two of the sequential evaluation, the ALJ found Ms. S. had the severe impairments of autism, generalized anxiety disorder, attention deficit hyperactivity disorder, and hyperacusis.[20] The ALJ also found she had nonsevere impairments of posttraumatic stress disorder and "right sided twitching/syncopy with collapse" (which he found did not meet the durational requirements for severity).[21] At step three, the ALJ

---

[15] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

[16] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[17] *Id.*

[18] (*See* Tr. 30, 231.)

[19] (Tr. 30–51.)

[20] (Tr. 33.)

[21] (Tr. 33–34.)

4

found these impairments did not meet or medically equal an impairment listing.[22] The ALJ then found Ms. S. had the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but with certain nonexertional limitations:

> she can be exposed to moderate noise as defined in the *Selected Characteristics of Occupations* (SCO); she can hear and communicate simple oral instructions; she can perform simple, goal-oriented but not assembly line-paced work; she can occasionally interact with co-workers and supervisors; she can have brief and superficial interaction with the general public; and she can adapt to routine changes in the work place.[23]

At step four, after considering the testimony of a vocational expert, the ALJ found Ms. S. could not perform past work.[24] But at step five, based on the expert's testimony, the ALJ found Ms. S. could perform other jobs in the national economy, including final assembler, routing clerk, and "marker."[25] Therefore, the ALJ found Ms. S. not disabled and denied her claims.[26]

The Appeals Council denied Ms. S.'s request for review,[27] making the ALJ's decision final for purposes of judicial review.

---

[22] (Tr. 34–37.)

[23] (Tr. 37.)

[24] (Tr. 49.)

[25] (Tr. 50–51.)

[26] (Tr. 51.)

[27] (Tr. 17–19.)

5

## ANALYSIS

Ms. S. raises a single claim of error: she argues the ALJ erred by failing to incorporate a requirement to use ear protection in her RFC.[28] She contends the ALJ should have explicitly included this limitation because it was part of an audiologist's medical opinion which the ALJ found persuasive.[29] And she asserts this error was harmful because the ALJ did not include her need for ear protection in the hypotheticals posed to the vocational expert.[30] The Commissioner, on the other hand, argues the ALJ reasonably accounted for Ms. S.'s hearing limitations by restricting her exposure to noise, limiting her social interaction, and specifying that she could hear and communicate only simple oral instructions.[31] As explained below, the ALJ's failure to include a limitation relating to use of ear protection in the RFC, or to adequately explain its omission, requires reversal.

A. *Legal Standards*

A claimant's RFC is the most she can do in a work setting considering her limitations.[32] In assessing RFC, the ALJ considers "the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain,

---

[28] (Opening Br. 7, Doc. No. 10.)

[29] (*Id.* at 9.)

[30] (*Id.* at 9–10.)

[31] (Comm'r's Br. 2, 7–8, Doc. No. 15.)

[32] *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* SSR 96-8p, 1996 SSR LEXIS 5, at *1–2 (July 2, 1996).

may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."[33]  The ALJ considers all relevant medical and other evidence in the record.[34]

In determining a claimant's RFC, an ALJ must assess the persuasiveness of medical opinion evidence.[35]  And if "the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted."[36]  The failure to explain the omission of limitations from medical opinions which the ALJ finds persuasive constitutes legal error requiring reversal.[37]

B.  *Audiologist's Opinion and the ALJ's Findings*

Dr. Faye Mitsunaga, an audiologist, evaluated Ms. S. in July 2021.[38]  Based on her test results, Dr. Mitsunaga diagnosed Ms. S. with hyperacusis, a "highly debilitating hearing disorder characterized by an increased sensitivity to certain frequencies and volume ranges of sound (a collapsed tolerance to usual environmental sound)."[39]  As she explained, a person with severe hyperacusis "has difficulty tolerating everyday sounds, which become painful or loud[,] and must use ear protection to help relieve the

---

[33] SSR 96-8p, 1996 SSR LEXIS 5, at *5.

[34] *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

[35] 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

[36] SSR 96-8p, 1996 SSR LEXIS 5, at *20.

[37] *Parker v. Comm'r*, 922 F.3d 1169, 1172–73 (10th Cir. 2019).

[38] (Tr. 372.)

[39] (*Id.*)

discomfort."[40]  Dr. Mitsunaga stated Ms. S. could not tolerate certain sound levels.[41] She opined Ms. S. "would have difficulty in most environments, especially around background noise"; she was "extremely sensitive to everyday sounds, including normal conversational speech"; and she needed "to use ear protection in all environments."[42] Due to Ms. S.'s "difficulty tolerating most sounds in work and/or social environments" as a result of her hyperacusis, Dr. Mitsunaga "recommended that she obtain custom ear protection to reduce noise and make it more comfortable in everyday listening conditions."[43]

The ALJ found Dr. Mitsunaga's medical opinion (and suggested limitations) persuasive.[44]  He noted examination findings supported Dr. Mitsunaga's recommendation to obtain earplugs[45]—and that it was "a reasonable and practical recommendation and [was] shown to be effective in blocking out noise."[46]  As the ALJ acknowledged, Ms. S. was fitted for custom earplugs in September 2021 (which were

---

[40] (*Id.*)

[41] (*Id.*)  Specifically, she stated Ms. S. could not "tolerate sound levels above 65 db HL across frequencies from 250–8000 Hz."  (*Id.*)

[42] (*Id.*)

[43] (*Id.*)

[44] (Tr. 45.)

[45] (*Id.*)

[46] (Tr. 39.)

"comfortable and blocked out the sound"), and she was refitted for earplugs in November 2021 and June 2022.[47] The ALJ then stated:

> However, I have provided several other restrictions to further account for limitations caused by the claimant's hyperacusis. These include restrictions from exposure to noise and social interactions with others. Further, she can hear and communicate only simple oral instructions.
>
> These restrictions are consistent with the results of the claimant's audiological evaluation discussed above. They are supported by the corresponding medical opinion of Dr. [Mitsunaga] and the prior administrative medical findings of the State agency medical consultants . . . .[48]

Ultimately, the ALJ included the following restrictions in Ms. S.'s RFC: "she can be exposed to moderate noise as defined in the *Selected Characteristics of Occupations* (SCO); she can hear and communicate simple oral instructions; . . . she can occasionally interact with co-workers and supervisors; [and] she can have brief and superficial interaction with the general public . . . ."[49] The ALJ did not include a limitation regarding the use of ear protection in Ms. S.'s RFC or in the corresponding hypothetical questions posed to the vocational expert.[50]

C. Analysis

Where the ALJ found Dr. Mitsunaga's medical opinions persuasive, including her opinion regarding Ms. S.'s need for ear protection, the ALJ erred in failing to either

---

[47] (Tr. 39, 538–41.)

[48] (Tr. 39; *see also* Tr. 45 (restating these findings).)

[49] (Tr. 37.)

[50] (*See* Tr. 78–80.)

incorporate this requirement into Ms. S.'s RFC or explain why it was omitted. Absent such explanation, the RFC determination cannot be reconciled with the ALJ's assessment of Dr. Mitsunaga's medical opinions.

The Commissioner argues the ALJ reasonably accounted for Ms. S.'s hearing limitations by restricting her exposure to noise, limiting her social interaction, and specifying that she could hear and communicate only simple oral instructions.[51] But the ALJ's own explanation undermines the argument that these restrictions were sufficient—in the absence of ear protection—to address Ms. S.'s limitations related to hyperacusis. Immediately after finding the recommendation for ear protection reasonable and supported, the ALJ explained he was including "several *other* restrictions to *further* account for limitations caused by the claimant's hyperacusis."[52] The ALJ's use of the words "other" and "further" indicates these restrictions were in addition to, not instead of, the use of ear protection. And the ALJ made no finding that these "other" restrictions sufficiently accounted for Ms. S.'s hearing limitations in the absence of the ear protection Dr. Mitsunaga opined was necessary.

Even if the ALJ had intended these restrictions to replace the need for ear protection, this seems at odds with Dr. Mitsunaga's opinion. Dr. Mitsunaga opined Ms. S. would have difficulty tolerating "most sounds" in a work environment, including normal conversational speech, and needed to "use ear protection in all environments" to

---

[51] (Comm'r's Br. 2, 7–8, Doc. No. 15.)

[52] (Tr. 39 (emphasis added); *see also* Tr. 45 (stating the ALJ provided "numerous other restrictions to further account for limitations caused by the claimant's hyperacusis").)

make "everyday listening conditions" more comfortable.[53] The ALJ did not explain how this opinion (which he found persuasive) could be consistent with an RFC finding Ms. S. could be exposed to moderate noise (as defined in the SCO) without ear protection. The SCO defines "moderate noise" as a "business office where type-writers are used; department store; grocery store; light traffic; fast food restaurant at off-hours."[54] This definition seems consistent with work environments containing "everyday sounds" and "normal conversational speech"—which Dr. Mitsunaga opined Ms. S. could not tolerate without ear protection.[55]

The Commissioner next suggests the ALJ must have simply assumed Ms. S. would be wearing her custom ear protection at all times, meaning ear protection did not need to be included in the RFC.[56] The Commissioner compares ear protection to eyeglasses, arguing "there would be no reason to include personal use items such as ear plugs" in the RFC finding or the hypothetical RFC posed to the vocational expert.[57]

There are several problems with this argument. First, the ALJ did not expressly state any assumption that Ms. S. would wear ear protection at work. Nor did he specify whether the RFC determination was based on Ms. S.'s abilities with or without ear

---

[53] (Tr. 372.)

[54] U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, App. D, ¶ 5.

[55] (Tr. 372.)

[56] (Comm'r's Br. 10, Doc. No. 15.)

[57] (*Id.* at 10–11.)

protection.  Second, the Commissioner offers no authority to support the argument that ear protection may be treated like eyeglasses for purposes of a social security disability determination.  The governing regulations specifically provide that vision impairments are evaluated with "use of a correcting lens."[58]  The Commissioner identifies no analogous authority applicable to hearing impairments and earplugs.  Thus, the court cannot simply assume the RFC determination in this case was premised on the use of ear protection, where the ALJ did not state this in his decision.

Moreover, the Commissioner offers no authority supporting his position that where a claimant requires ear protection, this restriction need not be included in the RFC or corresponding hypothetical posed to the vocational expert.  Use of ear protection is commonly included in a claimant's RFC in cases involving hyperacusis or other hearing impairments.[59]  Even if it could be assumed the RFC in this case was premised on use of ear protection, the failure to mention it in the corresponding hypothetical means the vocational expert did not consider whether a restriction requiring

---

[58] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 2.00(A)(2)(a); see also *Nguyen v. Shalala*, 43 F3d 1400, 1403–04 (10th Cir. 1994) (noting statutory blindness is evaluated "with correction").

[59] *See, e.g.*, *K.M. v. Comm'r*, No. 23-cv-00654, 2024 U.S. Dist. LEXIS 59849, at *3 (D. Colo. Mar. 31, 2024) (unpublished) (RFC for a claimant with hyperacusis stated he "requires the use of ear plugs during work hours when not on the telephone, but the earplugs would allow for the ability to hear any types of sirens, alarms, or loud yelling for emergency situations"); *Clubb v. Colvin*, No. CIV-15-985, 2016 U.S. Dist. LEXIS 125783, at *3 (W.D. Okla. Aug. 22, 2016) (unpublished) (RFC stated "[t]he claimant requires a quiet to moderate noise environment and must use ear protection in loud noise environment"); *Ness v. Berryhill*, No. 17-cv-02232, 2018 U.S. Dist. LEXIS 120794, at *16 (D. Colo. July 19, 2018) (unpublished) (RFC stated the claimant "must be able to use ear protection in areas with high noise levels").

use of ear protection was compatible with the jobs she identified.  In *K.M. v. Commissioner*,[60] the court noted a requirement to wear earplugs at work all day might cause social limitations which "could plausibly erode the jobs base."[61]  Here, the ALJ included some social limitations in Ms. S.'s RFC, but it is unclear whether these were sufficient (or even intended) to account for limitations resulting from use of ear protection—because the ALJ did not explain whether the RFC was premised on the use of ear protection.  Where the use of ear protection could plausibly erode the jobs base, the failure to include this limitation in the hypothetical posed to the vocational expert is reversible error.[62]

In sum, the ALJ found Dr. Mitsunaga's opinion regarding Ms. S.'s need for ear protection persuasive but did not include the use of ear protection in the RFC or explain its omission.  And because use of ear protection was not included in the hypothetical RFC posed to the vocational expert, the expert did not consider whether this limitation was compatible with the jobs she identified Ms. S. as capable of performing.  Under

---

[60] 2024 U.S. Dist. LEXIS 59849.

[61] *Id.* at *16–17.  The court in *K.M.* ultimately concluded the ALJ's error in omitting social limitations resulting from use of earplugs in the RFC was harmless, based on the level of social interaction required by the jobs identified by the vocational expert in that case. *See id.* at *17–21.  Here, the Commissioner has not asserted harmless error.

[62] *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) ("Testimony elicited by hypothetical questions [posed to a vocational expert] that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [ALJ]'s decision.").

these circumstances, the court cannot find the ALJ's decision was supported by substantial evidence, and reversal is required.

## RECOMMENDATION

The undersigned recommends the district judge reverse the Commissioner's decision and remand for additional administrative proceedings. The parties have the right to object to this Report and Recommendation within fourteen days, and failure to object may be considered a waiver of objections.[63]

DATED this 5th day of August, 2025.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

---

[63] *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72(b).